UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY JOSEPH
JACKSON,

               Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.

_____/

Case No. 2:15-cv-11161

Judge Marianne O. Battani

Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 10) and DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 12)

**I.      RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT IN PART AND DENY IN PART**

Plaintiff's motion for summary judgment (DE 10), **GRANT IN PART AND**

**DENY IN PART** Defendant's motion for summary judgment (DE 12), **AFFIRM**

**IN PART** the Commissioner's decision and **REMAND** to the Administrative Law

Judge for further consideration consistent with this Report.

**II.      REPORT**

Plaintiff, Anthony Joseph Jackson, brings this action under 42 U.S.C. §

405(g) and 42 U.S.C. § 1383(c) for review of a final decision of the Commissioner

of Social Security ("Commissioner") denying his applications for disability

insurance benefits (DIB) and supplemental security income benefits (SSIB).  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (DE 10), the Commissioner's cross motion for summary judgment (DE 12), Plaintiff's answer (DE 13) and the administrative record (DE 8).

### A.     Background

#### 1.     Plaintiff's Prior Application

By way of background, the record contains the transcript of a July 22, 2010 hearing before ALJ David Begley, at which Plaintiff testified and was represented by counsel, and at which VE Carol Bennett testified.  (R. at 53-100).  ALJ Begley's August 6, 2010 decision included a finding that Plaintiff had an RFC to perform a full-range of sedentary work activity.  (R. at 101-116).  On December 13, 2011, the Appeals Council denied Plaintiff's request for review.  (R. at 117-123).

#### 2.     Plaintiff's Current Application

Plaintiff filed his applications for DIB and SSIB, which are at issue in this appeal, on February 1, 2012, alleging that he has been disabled since December 14, 2011, at age 38.  (R. at 218-221, 222-227.)  Plaintiff alleges disability as a result of:  broken back, broken feet, fractured hip, bipolar disorder, anxiety, depression,

stroke and hernia.  (R. at 237-240, 241-252.)  Plaintiff's applications were denied on July 24, 2012.  (R. at 124-138, 139-153; *see also* R. at 156-166, 167-175.)

On July 30, 2012, Plaintiff sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  (R. at 176-177.)  ALJ John A. Ransom held a hearing on August 27, 2013, at which Plaintiff was represented by counsel and Vocational Expert (VE) Judith Findora testified.  (R. at 24-52.)  On September 12, 2013, ALJ Ransom determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 7-23.)

Plaintiff requested review of the hearing decision.  (R. at 283-286.)  On January 26, 2015, the Appeals Council denied Plaintiff's request for review.  (R. at 1-6.)  Thus, ALJ Ransom's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action on March 27, 2015.  (DE 1.)

### B.    Plaintiff's Medical History

In his current application for benefits, Plaintiff alleges that he has been disabled since December 14, 2011.  (*See* R. at 218.)  Approximately 550 pages of Plaintiff's medical records were available to ALJ Ransom.  R. at 287-837 (Exhibits B1F-B25F).  Of particular import are those which were submitted after ALJ Begley's August 6, 2010 decision.  (R. at 101-116, Exhibits 12F – 25F (R. at 514-837).)

Although Plaintiff's medical records will be discussed in detail as necessary below, I note here that Plaintiff was involved in a motor vehicle accident on or about September 25, 2012, after he had already requested de novo review on the instant application for benefits but before ALJ Ransom held the related hearing. As a result, he was admitted to Genesys Regional Medical Center. (R. at 769-773, 774-778.) During this time, Plaintiff underwent ankle, foot and chest x-rays, brain and cervical spine CTs, a chest/abdomen/pelvis CT and an MRI of the cervical spine. (R. at 755-767). He was discharged on October 2, 2012. (R. at 768.)

### C.   Hearing Testimony (August 27, 2013)

#### 1.   Plaintiff's Testimony

Plaintiff Anthony Joseph Jackson testified at the August 27, 2013 hearing. (R. at 26-50.) He has not worked since 2009. (R. at 27.) He referenced an injury to his right foot, which was apparently punctured by the gas pedal in a 2009 motor vehicle accident. (*See* R. at 43.)[1] Plaintiff also testified to having rods and screws in his thoracic spine and stated he is "always in pain." (R. at 30.)[2] During September 2012, he was in another motor vehicle accident, this one allegedly occurring from a seizure he suffered while withdrawing from a prescription

---

[1] Plaintiff was admitted to Tarrant County Hospital District in Fort Worth Texas on March 4, 2009 following a motor vehicle collision. (R. at 309-316.)

[2] Here, it is not clear if Plaintiff is referring to his March 5, 2009 surgery performed by Paul H. Cho, M.D. for a T11 to L3 fusion and L1 laminectomy for decompression. (*See* R. at 317-319.)

4

medication. His back was injured. (R. at 27-28.) According to Plaintiff, the big problem is his mid-back. (R. at 29.)

Plaintiff has had problems with his ankle. (R. at 32.) Plaintiff claims that, if he wears his brace and takes his medication, he can walk for about ten minutes. (R. at 33.) The pain in his ankle is normally seven on a scale of ten; however, the pain in his back is worse. (R. at 34.) Plaintiff testified that, during a typical afternoon, he will spend a total of approximately two hours lying down. (R. at 37; *see also* R. at 34-37, 45-46.) He has been using a cane on and off since 2009. (R. at 42.)

Plaintiff further testified that he has been sober for almost 11 months. (R. at 32.) With respect to psychiatric treatment, he explained that he treats with a therapist at Hope Network once per month and has been prescribed Xanax. (R. at 28, 38-39.) He further noted that he has racing thoughts, and his mental problems affect his social life. (R. at 39-40.)

### 2.   Vocational Expert Testimony

VE Judith Findora testified as to two hypotheticals, the first of which assumed credibility:

> Q:    Okay. I would like you to assume for me, if you would, that he is 40 years of age with his education and his past work as it appears in the record, and assume further, if you would, that he has the limitations and impairments that he's alleged and that ***his testimony is credible***. Assuming those facts and your opinion, would he be able to perform any of his past work or any other sedentary or light work?

A:      No.

Q:      Why not?

A:      Primarily his testimony about the amount of time he spends
lying down during the day.

(R. at 50-51 (emphasis added).)  The ALJ then asked a second hypothetical,

this time taking away credibility:

Q:      Assume for me, if you would, that he could perform sedentary
work. He'd require a job with the following restrictions. He would
need a sit/stand option at will with no repetitive bending, twisting or
turning. No crawling, squatting, kneeling. Occasional stair climbing.
No air or vibrating tools. No overhead work. Limited contact with the
public. Low stress work. Occasional supervision.  Use of a cane as
needed. Assuming those facts, in your opinion, would there be jobs in
existence in significant numbers in the regional economy that he could
perform?

A:      Yes. There are administrative support workers. Those number
approximately 4,000 regionally, which is the State of Michigan. There
are bench assemblers. Those number approximately 1,500 regionally.
There are stock handlers and hand packers numbering approximately
2,000 regionally.

(R. at 51.)

### D.      The Administrative Decision[3]

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a
five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4).
Although a dispositive finding at any step terminates the ALJ's review, *see Colvin
v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential
review considers and answers five questions:

1.      Is the claimant engaged in substantial gainful activity?

ALJ Ransom rendered his decision on September 12, 2013. (R. at 7-23.) At Step 1, the ALJ found that Plaintiff has not engaged in any substantial gainful activity since December 14, 2011, the alleged onset date. (R. at 12.)

At Step 2, the ALJ found that Plaintiff has the following severe impairments: status post motor vehicle accident (with a compression fracture deformity at T10 and L1), a dysthymic disorder, an anxiety disorder and history of alcohol dependence in remission. (R. at 13.)

At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. at 13-14.)

At Step 4, the ALJ found that Plaintiff has the residual functional capacity to perform sedentary work in a job that provides for: a sit/stand option at will; no repetitive bending, twisting or turning, no crawling, squatting or kneeling and only

---

2.      Does the claimant suffer from one or more severe impairments?
3.      Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.      Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.      Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

occasional climbing of stairs, no use of air or vibrating tools; limited contact with the public, performing low stress work that requires only occasional supervision, with no overhead work and the ability to use a cane as needed.  (R. at 14-17.) Moreover, the ALJ found that Plaintiff is unable to perform any past relevant work. (R. at 18.)

At Step 5, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, including administrative support person, (bench) assembler, and stock handler and packer.  (R. at 18-19.)

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,

to evaluate the credibility of witnesses, including that of the claimant.").

        Although the substantial evidence standard is deferential, it is not trivial.

The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487

(1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that

would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a

decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.    Analysis

In his motion for summary judgment, Plaintiff sets forth an overriding statement of error that "the Decision of the Commissioner is not supported by substantial evidence in the whole record," with the following sub-arguments:

1.    The ALJ failed to mention, much less evaluate, several critical exhibits or parts of exhibits.

2.    There is also a major defect in the ALJ's credibility determination, or lack thereof.

3.    The ALJ's decision is not in accordance with *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997).

(DE 10 at 1 ¶ 2, DE 10 at 7-10.)  The Commissioner opposes Plaintiff's motion, specifically asserting that:

1.    The ALJ was not required to discuss every record in the decision.

2.    Substantial evidence supports the ALJ's credibility determination.

3.    Substantial evidence supports the ALJ's weighing of the opinion evidence.

4.    *Drummond* does not require remand in this case.

(DE 12 at 14-24.)  Plaintiff filed an "Answer," which is most accurately described as a reply brief. (DE 13.)

The Undersigned will address each of the issues raised by Plaintiff and the parties' arguments in turn.[4]

> **1.** **The ALJ properly considered the physical and most of the mental evidence of record, but the ALJ's consideration of Plaintiff's alleged bipolar disorder is lacking.**

Plaintiff alleges that ALJ Ransom "failed to mention, much less evaluate, several critical exhibits or parts of exhibits." Plaintiff further alleges that "large chunks of records including entire impairments are not even discussed." In particular, he takes issue with the ALJ's treatment, or alleged lack of treatment, of Exhibits B13F (R. 553-573), B14F (R. 574-599), B18F (R. 651-672), B19F (R. at 673-710), B22F (R. at 755-780), B24F (R. at 782-807) and B25F (R. at 808-837).

---

[4] Plaintiff's motion for summary judgment contains a single sentence which states that, "The ALJ . . . afforded 'great weight' (AR 17) to a non-examining State physician who examined in July, 2012, before the last auto accident." (DE 10 at 9.) The Commissioner treated this as a distinct assignment of error, to which she accorded a separate issue for review worthy of an entire sub-section of her brief. (DE 12 at 20-21.) However, in his reply, Plaintiff explains that he "only referred to the fact that the ALJ gave 'great weight' to an opinion issued during a relevant period to a non-examining physician who reviewed records several months before a new accident actually added to the pathology[,]" and further notes that the Commissioner "does not correctly identify…the errors assigned by Plaintiff . . . ." (DE 13 at 1 ¶ 1, DE 13 at 6.) Thus, this report avoids any significant discussion of the third issue identified by the Commissioner and only addresses three assignments of error, as clarified by Plaintiff in his reply. This initial confusion would have been avoided if Plaintiff had complied with E.D. Mich. LR 7.1(d)(2), which requires that a brief in support of a motion or response must "must, *at the beginning*, contain a concise statement of the issues presented . . . ." (Emphasis added.)

(*See* DE 10 at 8-9.)  In other words, Plaintiff argues, "the ALJ did not review evidence which contradicted his findings."  (DE 13 at 4-5.)

Here, the Court should conclude that the ALJ properly considered the physical and most of the mental medical evidence of record, but the Court should also conclude that the ALJ's consideration of Plaintiff's alleged and documented bipolar disorder is lacking:

### a.   Consideration of physical medical evidence and resulting limitations

### i.   Left foot/ankle

During the Step 4 RFC determination, ALJ Ransom expressly considered Plaintiff's April 18, 2012 report of left foot pain; a September 26, 2012 x-ray of the left ankle, which revealed "[o]ssific fragment at the distal to the medial malleolus appears chronic[,]" and "[s]ee definite evidence of acute fracture[;]" and Susan Mosier-LaClair, M.D.'s May 30, 2013 assessment of "left end-stage subtalar joint arthritis status post possible old talus or calcaneus fracture."  (R. at 16, 736, 755, 827-828.)

Plaintiff contends that Exhibits B13F (Denton Regional Medical Center) and B14F (Paul H. Cho, M.D.) "showed new left ankle pathology and an opinion by a treating physician that Plaintiff could not work at sedentary work even if it had a sit/stand option."  (DE 10 at 8.)  To the extent Plaintiff contends that "he cannot perform sedentary work even with a sit/stand option[,]" (DE 10 at 4, 8 & 10), he

12

seems to rely upon Dr. Cho's July and August 2010 opinions (R. at 592-594, 590-591 [Ex. 14F]).

As an initial matter, neither Exhibit 13F nor Exhibit 14F was available to ALJ Begley.  (R. at 116, 553-573, 574-599.)  Instead, these items were before the Appeals Council at the time it issued its December 13, 2011 denial of Plaintiff's request for review.  (R. at 120-121.)

Moreover, an ALJ's failure to directly address each piece of evidence is not, alone, a basis for remand.  *See Kornecky v. Commissioner of Social Security,* 167 F.App'x 496, 507-508 (6th Cir. 2006) ("While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that:  '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.  Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.'") (quoting *Loral Defense Systems–Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir.1999)).

Finally, to the extent Plaintiff points the Court's attention to the October 30, 2010 Denton Regional Medical Center – Emergency Department notes concerning injury to Plaintiff's left foot and left ankle (R. at 555-562 [Ex. 13F]), to Paul Cho, M.D.'s August 18, 2010 opinion that Plaintiff could not perform sedentary work on

13

a full-time basis (R. at 592-594 [Ex. 14F]) and to Dr. Cho's September 8, 2010

opinion that, from a neurosurgical stand point, Plaintiff could not perform at the

sedentary level full time with the ability to change positions as needed (R. at 590-

591 [Ex. 14F]), these records predate Plaintiff's alleged December 14, 2011 date of

onset. *See Moore v. Colvin*, No. 14-12310, 2015 WL 4066735, at *4 (E.D. Mich.

July 2, 2015) (Cohn, J.) ("an ALJ is limited to considering medical evidence

rendered after the alleged onset date.").[5] Moreover, "a treating physician's opinion

---

[5] Plaintiff attempts to distinguish his case by noting that ALJ Begley's August 6, 2010 decision (R. at 101-116) predates the October 30, 2010 records from Denton Regional Medical Center (R. at 553-573 [Ex. B13F]) and several records of Dr. Cho, such as those dated August 16, 2010, September 27, 2010, September 8, 2010, and August 18, 2010 and November 17, 2010 (R. at 575-577, 590, 592-593 [Ex. B14F]). (*See* DE 13 at 6.)  In addition, Plaintiff disputes the accuracy of the December 14, 2011 onset date, claiming it should have been August 7, 2010 – the day after ALJ Begley's August 6, 2010 decision, a point he brought to the attention of ALJ Ransom by a letter dated August 23, 2013 (R. at 280), four days before the August 27, 2013 hearing. (*See* DE 10 at 3 & 4, DE 13 at 7.)  Plaintiff suspects this effected ALJ Ransom's failure to mention Exhibits 13F and 14F.  (DE 10 at 4-5.)  In the event benefits are awarded, it seems that Plaintiff will be due a ruling on this issue.  The December 14, 2011 onset date was listed in Plaintiff's February 1, 2012 application summary, and ALJ Ransom relied upon it in his decision.  (R. 12, 218).  Importantly, to the extent Plaintiff states, "we apprised the ALJ that the onset date was not correct but no ruling was made[,]" I note that "[i]n the Sixth Circuit (Kentucky, Michigan, Ohio, and Tennessee), adjudicators must follow Social Security Ruling (SSR) 13-3p: Title II: Appeal of an Initial Medical Disability Cessation Determination or Decision, which extends the period adjudicated in a closed period of disability and CDR cessation cases through the date the prior determination or decision was issued. In these cases, the earliest onset date that can be set is the day after the date of the prior ALJ decision."  SSA – POMS:  **DI 20101.025.**  Thus, while this report does not address Plaintiff's allegation that "[t]he ALJ should have reviewed this at the least to determine claimant's status as

is only entitled to such special attention and deference when it is a *medical opinion.* When a treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is 'disabled' or 'unable to work'—the opinion is not entitled to any particular weight." *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 492-493 (6th Cir. 2010) (citations omitted).

### ii.    Lumbar

During the Step 4 RFC determination, the ALJ expressly cited the March 6, 2012 notes of Fengxia Qiao, M.D.  Although this Court interprets these notes by Dr. Qiao as indicating that palpation-spinal tenderness was normal, ALJ Ransom considered these notes as indicating tenderness in the lumbar spine.  (*See* R. at 16, 719-723.)  Additionally, the ALJ cited the September 25, 2012 CT scan, which revealed "[m]oderate compression fracture deformities T10 and L1[,]" (R. at 764), the March 7, 2013 CT scan, which revealed "[c]ompression fracture of T8, T10, L1[,]" (R. at 781), and the May 15, 2013 MRIs, each of which showed some compression fracture, one of which notes "no significant central canal stenosis[,]" and another which notes "[n]o . . . mass effect upon the thoracic spinal cord."  (R. at 812-813, 814-815).  (R. at 17.)

Here, pointing to the results of Plaintiff's September 25, 2012 CT of the chest, abdomen and pelvis, which revealed "moderate compression fracture

_____

of the erroneous alleged onset date[,]" (DE 13 at 7), the Commissioner will need to address this issue in the event benefits are awarded.

deformities T10 and L1[,]" and "approximately 2 mm retropulsion of the L1 segment results in some degree of central canal narrowing," Plaintiff claims the ALJ failed to mention the now moderate lumbar disease. (DE 10 at 8, DE 13 at 4, R. at 764-765.) However, as noted above, the ALJ expressly considered the March 7, 2013 CT scan results (R. at 781) and the May 15, 2013 MRI results (R. at 812-813, 814-815) – dates following the September 25, 2012 moderate compression to which Plaintiff refers (R. at 764-765), and acknowledged that, following the September 2012 automobile accident, Plaintiff requires significant restrictions due to back and ankle pain (R. at 17). Moreover, the ALJ added a host of functional limitations to his sedentary RFC, such as a sit/stand option at will; various limitations on bending, twisting, turning, crawling, squatting, kneeling and climbing of stairs; and no overhead work. (R. at 14.)

### iii.   Records from McLaren Flint (Exhibits B23F, B25F)

During the Step 4 RFC finding, the ALJ expressly considered some records from McLaren Flint (Exhibits 23F, 25F), such as the March 7, 2013 thoracic spine CT (R. at 781); the May 15, 2013 MRI of the lumbar spine (R. at 812-813); the May 15, 2013 MRI of the thoracic spine (R. at 814-815); the May 30, 2013 notes of Susan Mosier-LaClair, M.D. (R. at 827-828); and the July 16, 2013 physician record regarding hypertension, which notes that Plaintiff ambulates with a cane (R. at 808). (*See* R. at 17.) In his motion for summary judgment, Plaintiff claims the

16

ALJ "glossed over" Exhibit B25F (R. at 808-837).  Specifically, Plaintiff

complains:

> (a)     The ALJ does not mention M. Nasser Sabbagh, M.D.'s
> December 3, 2012 assessment that "[p]otentially we are dealing with
> benzodiazepine withdrawal, although the presence of
> encephalomalacia in the frontal region definitely puts him at risk for
> having partial seizures with secondary generalization."  (R. at 836-
> 837.)  Dr. Sabbagh's assessment referred to the September 25, 2012
> brain CT, which suspected some mild generalized atrophy and found
> "some focal low density / encephalomalacia in the left subfrontal area
> . . . ."  (R. at 757-758.)
>
> (b)     The ALJ does not mention John C. Kohn, D.O.'s February 8,
> 2013 assessment that "[t]here are paravertebral muscle spasm and
> tenderness throughout the thoracic and lumbar area[,]" with reflex
> changes and positive motion studies (R. at 833-835.)
>
> (c)     The ALJ mentions the May 15, 2013 CT scans of the lumbar
> and thoracic spine, (*see* R. at 17, 812-813, 814-815),[6] but the ALJ
> does not mention Dr. Kohn's March 11, 2013 assessment that "[t]here
> was mention of ventral impression on the thecal sac, and the
> radiculitis he is experiencing could be due to this problem."  (R. at
> 830.)
>
> (d)     The ALJ acknowledges Susan Mosier-LaClair, M.D.'s May 30,
> 2013 assessment that Plaintiff had left end-stage subtalar joint
> arthritis, but the ALJ omits her diagnoses that Plaintiff had moderate
> pre existing hindfoot and midfoot arthritis and injury deep peroneal
> nerve versus low back etiology.  (R. at 17, 828)

---

[6] The Court suspects the ALJ's reference to "no mass effect on the thoracic spine
cord[,]" (R. at 17), is a reference to the May 15, 2013 thoracic spine MRI results
(R. at 815).

17

(e)     The ALJ mentions the May 15, 2013 MRI of the lumbar spine,[7] but the ALJ does not mention the multilevel foraminal narrowing and small central disc protrusion both at the L5-S1 level (R. at 17, 812-813).

(DE 10 at 8-9.)

To the extent Plaintiff takes issue with the ALJ's failure to expressly mention Dr. Sabbagh's December 3, 2012 notes about seizures related to medication withdrawal or frontal lobe atrophy (DE 13 at 4, R. at 836-837), Plaintiff testified that he had a seizure caused by withdrawal from a prescription medication (R. at 27-28), and ALJ Ransom acknowledged Plaintiff's claim that he has a history of seizures (R. at 15).  Thus, the ALJ's failure to expressly refer to Dr. Sabbagh's letter, to the extent it was based upon seizures, was harmless. *Winter v. Comm'r of Soc. Sec.*, No. 12-11962, 2013 WL 4604782, at *10 (E.D. Mich. Aug. 29, 2013) ("even if the ALJ's picture of Plaintiff was somewhat incomplete, Plaintiff has not persuaded the Court that the ALJ's view of her resulted in prejudice.") (referencing *Shinseki v. Sanders,* 556 U.S. 396 (2009)).

Moreover, to the extent Plaintiff apparently takes issue with the ALJ's failure to discuss Plaintiff's development of muscle spasms in the lumbar and thoracic spinal areas since ALJ Begley's August 6, 2010 decision (DE 13 at 6, R. at 101-116), such as those mentioned by Dr. Kohn in his February 8, 2013 notes

---

[7] The ALJ refers to this test as a CT scan of the lumbar spine, when it was an MRI of the lumbar spine.  (R. at 17, 812-813.)

18

(R. at 833-835), Plaintiff has not shown how the RFC limitations imposed by ALJ Ransom inadequately address such spasms. The burden of challenging the ALJ's Step 4 RFC determination lies with Plaintiff. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) ("Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work . . . .").

**b.   Consideration of mental medical evidence and resulting limitations**

**i.   Dysthymic disorder, anxiety disorder and alcohol dependence**

At Step 2, ALJ Ransom concluded that Plaintiff's severe impairments included a dysthymic disorder, an anxiety disorder and a history of alcohol dependence in remission. (R. at 13.) At Step 3, ALJ Ransom found Plaintiff has moderate difficulties in social functioning. (R. at 13.) Within the Step 4 RFC determination, ALJ Ransom expressly noted therapist Wiggins's January 2012 diagnoses of generalized anxiety disorder and alcohol dependence and Global Assessment of Functioning (GAF)[8] score of 60 (R. at 660), as well as psychologist

_____

[8] The GAF scale was used to report a clinician's judgment of an individual's overall level of functioning. Clinicians selected a specific GAF score within the ten-point range by evaluating whether the individual was functioning at the higher or lower end of the range. *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 33–34 (American Psychiatric Association, 4th ed. text rev. 2000) (DSM-IV-TR). However, "the most recent version of the DSM does not include a GAF rating for assessment of mental disorders." *Bryce v.*

Dr. Dickson's July 23, 2012 diagnoses of dysthymic disorder and anxiety disorder, with alcohol dependence and Xanax dependence in remission and GAF score of 54 (R. at 753).  (R. at 16).  In addition, although not expressly cited by the ALJ, Plaintiff was diagnosed with anxiety and alcoholism during January 2012 (R. at 624, 626), and, on April 6, 2012, Dr. Qiao noted that Plaintiff was anxious.  (R. at 728.)

ALJ's Ransom's Step 4 RFC determination included the limitations of "limited contact with the public," and "performing low stress work that requires only occasional supervision . . . ."  (R. at 14.)  These limitations appear to be intended to accommodate the Step 2 severe mental impairments of dysthymic disorder and anxiety disorder, if not also the severe mental impairment of alcohol dependence in remission.  (R. at 13.)

### ii.    Global Assessment of Functioning (GAF)

Plaintiff also takes issue with the ALJ's failure to mention Ellen Johnson, D.O.'s March 6, 2012 GAF assessment of 49.  Plaintiff contends the 11-point decrease in GAF score from January 2012 to March 2012 shows a severe impairment in the area of vocational functioning.  (*See* DE 10 at 8, R. at 686).  To the extent Plaintiff argues that Dr. Johnson's March 6, 2012 GAF assessment of 49 (R. at 686) "fairly detracts from the weight of" therapist Wiggins's January 24,

---

*Comm'r of Soc. Sec.*, No. 12-CV-14618, 2014 WL 1328277, at *10 (E.D. Mich. Mar. 28, 2014).

2012 GAF assessment of 60 (R. at 660), or to the extent Plaintiff argues this was "cherry picking" on the ALJ's part in contravention of *Minor v. Comm'r of Soc. Sec.*, 513 F.App'x 417, 435 (6th Cir. 2013) (*see* DE 13 at 4), the ALJ expressly cited *the later*, July 23, 2012 GAF assessment of 54 by Dr. Dickson (R. at 16, 753). Such a score is consistent with moderate limitations.[9]

Moreover, even if Plaintiff is correct that an eleven point drop in Plaintiff's GAF score – from an initial score of 60 to a subsequent score of 49 after therapy was undertaken – shows "a severe impairment in the area of vocational functioning[,]" or "a severe limitation[,]" (*see* DE 10 at 8, DE 13 at 4), Plaintiff has not shown that the limitations imposed by the ALJ inadequately address Plaintiff's GAF assessments. As previously noted, the burden of challenging the ALJ's Step 4 RFC determination lies with Plaintiff. *Jones*, 336 F.3d at 474.

### iii.   Bipolar disorder

Plaintiff's disability report indicates that he seeks benefits in part for bipolar disorder. (R. at 242.) This was acknowledged in the July 24, 2012 disability determination explanation. (R. at 124, 129, 139, 143.) In fact, each of the July 24, 2012 disability determination explanations referred to March 5, 2012 records,

---

[9] "Individuals with scores of 51–60 are classified as having 'moderate symptoms ... or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" *Byrne v. Astrue*, No. 3:11CV00353, 2012 WL 5988639, at *4 n.5 (S.D. Ohio Nov. 29, 2012) (report and recommendation of Ovington, M.J.) (quoting DSM–IV–TR at 34).

presumably from Hamilton Community Health Network (HCHN), as indicating "bipolar affective disorder." (R. at 130, 144.) This actually seems to have been a reference to the March 6, 2012 visit, wherein Dr. Qiao of HCHN noted a history of bipolar affective disorder. (*See* R. at 719-723; *see also* R. at 746.)

However, the ALJ's September 12, 2013 decision does not appear to address bipolar disorder. (R. at 10-19.) That is not to say the ALJ did not consider other mentally related diagnoses. For example, the ALJ expressly cited: an apparent diagnoses of anxiety and alcoholism made at Hurley Medical Center on January 8, 2012 (R. at 624); the January 23, 2012 notes of Fengxia Qiao, M.D., which listed a history of alcoholism (R. at 643); Wiggins's January 24, 2012, biopsychosocial assessment, wherein he diagnosed generalized anxiety disorder and alcohol dependence and assessed a GAF of 60 (R. at 660);[10] Wiggins's February 23, 2012, request for psychiatric evaluation of Plaintiff (R. at 651); Wiggins's April 3, 2012, note that Plaintiff "reported no drug or alcohol use . . . ." (R. 674); and Wiggins's April 23, 2012 notes that Plaintiff did not show up for his session (R. at 673.) (*See* R. at 15-16.)

Nonetheless, the Court is aware of medical records which touch upon the issue of bipolar disorder. For example, Ellen Johnson, D.O.'s March 6, 2012

---

[10] Wiggins's diagnostic summary stated, among other things, "Client has not been clinically diagnosed with a me[n]tal health disorder, but he is curren[tl]y being treated by his PCP for panic attack and anxiety." (R. at 660.)

psychiatric evaluation diagnoses generalized anxiety disorder and appears to rule out bipolar disorder; however, her diagnostic summary lists "polysubstance, . . . bipolar, . . . generalized anxiety, alcohol dependence, and Xanax dependence." (R. at 685-687.) Also, while the ALJ did expressly refer to the March 6, 2012 notes of Fengxia Qiao, M.D., the ALJ did not mention that these notes also indicate that Plaintiff was anxious and easily distracted and acknowledge a history of bipolar affective disorder. (R. at 16, 721-722.) Furthermore, Plaintiff was assessed at Hope Network on February 15, 2013 by Deborah Casey, LMSW, who checked "markedly ill" for "overall bipolar illness." (R. at 795-807, 801.)

Moreover, the March 14-15, 2013 psychiatric evaluation by Hope Network's Duncan Magoon, M.D., summarizes: "A 40-year-old white male successful and competent along with substance abuse, which basically covered his bipolar symptoms for many years until auto accidents, unable to work, unable to function, getting more and more frantic since disability is a far distant goal." (R. at 788-794, 793.) Thereafter, the July 10, 2013 notes of Dawn Angle, LLMSW indicate that Plaintiff "has had bipolar symptoms intermittently throughout his life . . . ." (R. at 784.)

Citing Dr. Magoon and/or Angle's notes, Plaintiff claims "[t]here is no mention that he has underlying bipolar disease, masked by his prior alcohol usage." (DE 10 at 6 & 8, DE 13 at 4, R. at 784, 793) Given that bipolar disorder

can be a seriously disabling condition, and given the Commissioner's failure to respond to Plaintiff's assertion by mentioning bipolar disorder in her motion for summary judgment (*see* DE 12), this Court is without direction on this issue. Therefore, in conjunction with my recommendation below that the case should be remanded for the ALJ to explain his credibility determination, the Court should also remand for the ALJ to address the issue of Plaintiff's alleged bipolar disorder.

### 2.    The ALJ failed to explain his credibility determination.

In his Step 4 RFC determination, ALJ Ransom acknowledged that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record."  He then considered Plaintiff's hearing testimony.  (*See* R. at 15.)  Ultimately, after giving express consideration to several medical records, ALJ Ransom found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  (R. at 15-17.)

Plaintiff takes issue with the ALJ's credibility determination.  Specifically, Plaintiff contends that "the ALJ makes conclusions without any showing of how Claimant was non-credible, or in what specific areas and/or statements he was non-credible."  (DE 10 at 9.)  In other words, Plaintiff contends the ALJ's statement

about his credibility is vague and does not comply with SSR 96-7p, which

concerns "assessing the credibility of an individual's statements[.]"  (DE 13 at 5.)

Specifically:

> *It is not sufficient for the adjudicator to make a single, conclusory statement* that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. *The determination or decision must contain **specific** reasons* for the finding on credibility, supported by the evidence in the case record, and *must be sufficiently **specific** to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.*

(SSR 96-7P (S.S.A. July 2, 1996) (emphasis added).)

The Court should conclude that the ALJ's credibility determination here is

not supported by substantial evidence.  True, "[t]he ALJ's assessment of credibility

is entitled to great weight and deference, since he [or she] had the opportunity to

observe the witness's demeanor."  *Infantado v. Astrue,* 263 F. App'x 469, 475 (6th

Cir. 2008).  Nevertheless, "an ALJ's assessment of a claimant's credibility must be

supported by substantial evidence."  *Walters v. Comm'r Soc. Sec.,* 127 F.3d 525,

531 (6th Cir. 1997).  "[B]lanket assertions that the claimant is not believable will

not pass muster . . . ."  *Thoroughman v. Colvin*, No. CV 14-141-WOB-CJS, 2015

WL 8228055, at *6 (E.D. Ky. Nov. 2, 2015), *report and recommendation adopted*

2015 WL 8228956 (E.D. Ky. Dec. 7, 2015).  "[W]here subjective pain complaints

play an important role in the diagnosis and treatment of the condition, providing

25

justification for discounting a claimant's statements is particularly important." *Rogers*, 486 F.3d 234, 248 (6th Cir. 2007) (citing *Hurst v. Sec'y of Health & Human Servs.,* 753 F.2d 517, 519 (6th Cir.1985)).

In this case, the ALJ's September 12, 2013 credibility statement does not comply with SSR 96-7p. (*See* R. at 15-17.) As noted above, the ALJ expressly considered Plaintiff's hearing testimony within the Step 4 RFC determination. (R. at 15.) However, with regard to credibility, the ALJ simply states, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. at 17.) This does not constitute "specific reasons for the finding on credibility . . . ." and, thus, does not make clear to Plaintiff and subsequent reviewers the ALJ's reasons for the weight he assigned to Plaintiff's credibility. *See* SSR 96-7p.

The Commissioner asks the Court to speculate about the ALJ's reasons, based on an unexpressed "negative inference" and certain other activities in which Plaintiff was engaged. (*See* DE 12 at 18-19.) For example, in determining that Plaintiff has mild restriction in activities of daily living at Step 3, and even in reviewing Plaintiff's testimony at Step 4, the ALJ referred to Plaintiff's testimony about shopping. (R. at 13, 15, 47-48.)[11] The ALJ also referred to Plaintiff's

---

[11] Plaintiff testified that he grocery shops "here and there. Like once every few months . . . ." (R. at 48.)

26

testimony that he "[p]lay[s] with the dog, tr[ies] to read, write, you know, just talk

on the phone . . . ." and also noted Plaintiff's testimony about driving.  (R. at 15,

35, 49.)  Moreover, as the Commissioner points out, the ALJ credited some of

Plaintiff's testimony.  For example, the ALJ credited Plaintiff's testimony

regarding use of a cane by imposing the limitation of "the ability to use a cane as

needed[,]" (R. at 14, 15, 41-42); the ALJ credited Plaintiff's testimony about

reaching above the shoulder by imposing the limitation of "no overhead work[,]"

(R. at 14, 15, 44); and the ALJ credited Plaintiff's testimony about being able to sit

for about 30 minutes by imposing the limitation of "a sit/stand option at will[,]" (R.

at 14, 15, 46).

Still, the Court is still left to speculate as to what the ALJ thought was

relevant based on a summary of Plaintiff's testimony and a multitude of earlier

citations to the medical record.  (R. at 15-17.)  "'It is more than merely 'helpful'

for the ALJ to articulate reasons ... for crediting or rejecting particular sources of

evidence. It is absolutely essential for meaningful appellate review.'"  *Hurst v.*

*Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) (quoting

*Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir.1984)).  ALJ Ransom's September

12, 2013 determination, in which he merely explains that "the claimant's

statements concerning the intensity, persistence and limiting effects of these

symptoms are not entirely credible for the reasons explained in this decision[,]" (R.

at 17), does not articulate reasons crediting or rejecting particular sources of evidence.

Moreover, the paucity of the ALJ's credibility determination is particularly consequential in the instant matter because of the manner in which he phrased his hypotheticals. As noted in Section C.2 of this report, *when asked to assume the credibility of Plaintiff's testimony*, the VE testified that Plaintiff **would not be able to perform** any of his past work or any other sedentary or light work, due to "his testimony about the amount of time he spends lying down during the day." (R. at 50-51.) Yet, while the ALJ acknowledges Plaintiff's testimony about lying down and napping (R. at 15, 35, 37), he does not specify which part of the record, if any, contradicts or undermines Plaintiff's testimony about what portion of his day is spent lying down. However, *when asked to assume that Plaintiff could perform sedentary work* with certain restrictions, *i.e.*, that Plaintiff's testimony was *not credible*, the VE testified that Plaintiff could perform jobs as an administrative support worker, a bench assembler and a stock handler / hand packer. (R. at 50-51.) In other words, **the VE's opinion completely hinges on credibility**. The Court should, therefore, remand this case with instructions that the ALJ consider Plaintiff's credibility in accordance with SSR 96-7p and give clear explanation for the same, so as to allow for meaningful appellate review on this issue. On appeal, the Court cannot be tasked with trying to figure out which portions of this

voluminous record the ALJ subjectively thought were relevant to his credibility assessment.[12]

### 3. The ALJ's opinion is consistent with the *Drummond* decision.

Plaintiff argues that ALJ Ransom improperly applied *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997). (*See* DE 10 at 10, DE 13 at 6.) In *Drummond*, the Sixth Circuit directed: "Absent evidence of an *improvement* in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997) (emphasis added).

The Court should conclude, as the Commissioner argues, that *Drummond* does not require remand in this case. (*See* DE 12 at 22-24.) The administrative record in this case contains two ALJ decisions: (1) on August 6, 2010, ALJ Begley found that Plaintiff had the RFC to perform, on a continuing and sustained basis, the exertional and non-exertional requirements of a *full range of sedentary work activity* (R. at 101-116), and (2) on September 12, 2013 ALJ Ransom found that

_____

[12] This Court has previously commented on an ALJ's use of template language. *See Hemingway v. Commissioner of Social Security*, No. 14-cv-12184, 2015 WL 4967060, *9 (E.D. Mich. Aug. 19, 2015) (Michelson, J., accepting report and recommendation of Patti, M.J.) ("Here, the ALJ provided a sufficiently specific explanation for her credibility determination, and linked the template language to the evidence in the record, pursuant to the rule."). In this case, the ALJ's complete failure to link the template language to the evidence in the record was compounded by the ALJ's use of hypotheticals which hinged on credibility.

Plaintiff had the RFC to perform *sedentary work, with several limitations* (R. at 7-23.)  Thus, the latter RFC determination was *more* restrictive.  (*See Kepke v. Comm'r of Soc. Sec.*, No. 13-13944, 2015 WL 348747, at *16 (E.D. Mich. Jan. 23, 2015) (Friedman, J., adopting report and recommendation of Binder, M.J.) ("this case is differentiated from *Drummond* in that the ALJ ultimately found Plaintiff more restricted in terms of the current RFC than the prior decision.").

Instead, Plaintiff's *Drummond* argument is more accurately a challenge to ALJ Ransom's determination that Plaintiff has the RFC to perform sedentary work *with the additional restrictions listed*.  For example, Plaintiff argues his condition has worsened since the first decision, specifically listing:

- a disabling mental condition / severe psychiatric conditions, likely referring to a January 8, 2012 head CT, a January 2012 SUD biopsychosocial assessment, a March 2012 SUD psychiatric evaluation, and a July 10, 2013 program discharge summary (R. at 627, 660, 686, 784);

- another accident with additional injuries and impairments, likely referring to the September 25, 2012 notes that the accident was caused by a seizure (R. at 776);

- a severe ankle problem, likely referring to the September 26, 2012 left ankle x-ray and Dr. Mosier-LaClair's May 30, 2013 assessment (R. at 755, 828);

- more serious lumbar disease, likely referring to the September 25, 2012 chest/abdomen/pelvis CT and the February 8, 2013 notes of Dr. Kohn (R. at 764-765, 833-835);

- frontal area brain atrophy, likely referring to Dr. Sabbagh's December 3, 2012 notes (R. at 836-837);

- muscle spasms in the lumbar and thoracic spinal areas, likely referring to Dr. Kohn's February 8, 2013 notes (R. at 833-835); and

- a T8 fracture causing possible radiculitis, likely referring to the March 7, 2013 thoracic spine CT, the May 15, 2013 thoracic spine MRI, and Dr. Kohn's March 11, 2013 notes (R. at 781, 814-815, 830).

(DE 10 at 10, DE 13 at 6.)

However, in arriving at the latter RFC determination, ALJ Ransom specifically acknowledged *Drummond* and the prior decision by ALJ Begley, generally noting: "The evidence of record supplied after the prior decision confirms *the claimant is now limited to less than a full range of sedentary work*." (R. at 17 (emphasis added).) Specifically,

> The record confirms the claimant underwent medical determination after his September 2012 automobile accident. The claimant now requires significant restrictions due to back and ankle pain. However, there is no indication the claimant has stenosis in the thoracic or lumbar spine or that he requires surgery. The claimant has significant arthritis in his ankle. However, there is no indication he could not perform a job that provides for a sit/stand option. The claimant is currently not going to a pain clinic and there is no indication the claimant is scheduled for surgery. No physician has disabled the claimant.

31

(*Id.*)  These observations appear to be accurate.[13]  Moreover, to the extent Plaintiff

challenges ALJ Ransom's conclusion that Plaintiff is now capable of performing a

limited range of sedentary work, this report has already concluded that substantial

evidence supports the ALJ's RFC determination.

### G.    Conclusion

In light of the above analysis, it is **RECOMMENDED** that the Court

**GRANT IN PART and DENY IN PART** Plaintiff's motion for summary

judgment (DE 10), **GRANT IN PART and DENY IN PART** Defendant's motion

for summary judgment (DE 12), **AFFIRM IN PART** the Commissioner of Social

Security's decision, and **REMAND** to the ALJ for further consideration consistent

with this Report. Upon remand, the ALJ should be directed to provide an

explanation of Plaintiff's credibility, in compliance with SSR 96-7p, with further

directions requiring the ALJ to explain whether Plaintiff's alleged and documented

bipolar disorder was considered in rendering an RFC opinion.  If it was, the ALJ

must explain how it was accounted for; if it was not, the RFC must take account of

this mental health condition and be re-evaluated. In addition, should benefits be

awarded, the ALJ will need to consider the appropriate onset date.

### III.    PROCEDURE ON OBJECTIONS

---

[13] For example, the March 15, 2013 MRI shows no significant stenosis (R. at 812-813, 814-815).

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

33

Dated: February 11, 2016                    s/Anthony P. Patti
                                            Anthony P. Patti
                                            UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on February 11, 2016, electronically and/or by U.S. Mail.

                                            s/Michael Williams
                                            Case Manager for the
                                            Honorable Anthony P. Patti